**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SANJAY AGGARWAL,** | ) | **CASE NO. 08 CV 1158** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **RAYTHEON COMPANY,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This case is before the Court upon four motions: (1) defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss for Failure to State a Claim (Doc. 10); (2) plaintiff's Motion to Stay Arbitration (Doc. 12); (3) plaintiff's Motion to Strike Portions of Keith J. Peden's Declaration (Doc. 17); and (4) defendant's Motion to Strike a Settlement Offer (Doc. 23). This case arises out of plaintiff's former employment with defendant. For the reasons that follow, defendant's Motion to Compel Arbitration is GRANTED. Plaintiff's Motion to Stay Arbitration is DENIED. Plaintiff's Motion to Strike Portions of the Peden Declaration is GRANTED. Defendant's Motion to Strike the Settlement Offer is GRANTED.

**FACTS**

The facts set forth below are taken from plaintiff's Complaint unless otherwise stated. Only those facts necessary to a resolution of the pending motions are presented. Plaintiff Sanjay Aggarwal brings this action against Raytheon Company asserting he is due payment under a written Incentive Agreement and an agreement to pay a "success fee" following a successful sale of Flight Options LLC, formerly a wholly-owned subsidiary of defendant.

In 2007, plaintiff was employed by Flight Options LLC. On or about April 4, 2007, plaintiff and defendant entered into the Incentive Agreement. The Incentive Agreement provides in relevant part:

> Dear Sanjay:
>
> Raytheon Company ("Raytheon") is exploring various alternatives with respect to Flight Options LLC ("FO") which may involve a Change in Control of FO. This letter sets forth a special incentive arrangement for which you will be eligible in the event of a Change in Control.
>
> \*\*\*
>
> 3. <u>Assistance</u>.
>
> (A) <u>Duty of Loyalty and Fiduciary Responsibility</u>. As part of the consideration for the benefits of this agreement, you agree to assist, support and fully cooperate with Raytheon and FO in all matters to effect a CIC, and perform such tasks requested of you to bring about such CIC.
>
> \*\*\*
>
> 4. <u>Term</u>. The term of this agreement shall be for a period of twenty-four (24) months from the date you execute your acceptance as indicated by your dated signature ("Effective Date"), *unless the closing date of the CIC (the "Closing Date") occurs before that date*. If the Closing Date has not occurred within twenty-four months of the Effective Date, this agreement shall expire as of that date and shall be null and void, and you will not be entitled to any portion of the Retention Bonus in Paragraph 5, unless Raytheon and you agree to extend and/or otherwise modify the agreement. *Such* extension and/or modification must be in writing and signed by the Senior Vice President, Human Resources of Raytheon.
>
> 5. <u>Retention Bonus</u>. If you continue as an employee until the

2

> Closing Date, you will receive a payment equal to one times your annual base salary as of that date and an amount equal to your targeted Results Based Incentive Bonus as set for that bonus period.
>
> \*\*\*
>
> 11. <u>Arbitration of Claims</u>.  The parties agree that any disputes arising *during the term of your employment* with Raytheon and/or FO, including but not limited to any claims arising under the terms of this agreement, shall be subject to final and binding arbitration as the sole and exclusive forum for dispute resolution.  Arbitration under this section shall be conducted pursuant to the rules of the American Arbitration Association applicable to employment disputes.
>
> 12. <u>Other Severance Benefit Programs</u>.  ... in the event you become entitled to a payment under this agreement you will not be eligible for benefits under any other Raytheon or FO agreement, plan, policy, program, or arrangement providing severance benefits.

Incentive Agreement at 1-4 (emphases added).  Plaintiff alleges that he also entered into a "Success Fee Agreement" with defendant:

> Separate from the Incentive Agreement, in 2007, Raytheon agreed to pay Aggarwal a "success fee" if he continued his work with Flight Options through the closing of the company's potential sale to a third-party ("Success Fee Agreement"). The agreed upon amount of the success fee payable to Aggarwal was a percentage of the sale price of Flight Options.

Complaint at ¶ 11.

On November 30, 2007, defendant sold its entire interest in Flight Options to a third-party private equity firm.  Plaintiff was an employee of Flight Options on that date.  Defendant has failed to make payment to plaintiff under either the Incentive Agreement or the Success Fee Agreement.  On May 8, 2008, defendant initiated arbitration over "the entire dispute over Aggarwal's special incentives."  *Raytheon Co. v. Sanjay Aggarwal*, AAA Case No. 11-166-00940-08.  Plaintiff initiated this action on May 9, 2008.

3

Plaintiff's Complaint contains six causes of action: breach of the Incentive Agreement, breach of the Success Fee Agreement, promissory estoppel relating to the promise to pay a success fee, unjust enrichment, violation of Ohio Rev. Code § 4113.15 in that the special incentives constitute withheld wages and a request for declaratory judgment that plaintiff's claims do not fall within the scope of the arbitration clause contained in the Incentive Agreement.

Defendant moves to compel arbitration and to strike introduction of a settlement offer. In the alternative, defendant moves to dismiss for failure to state a claim. Plaintiff moves to stay arbitration and to strike portions of Keith Peden's declaration. Each motion is opposed.

### **STANDARD OF REVIEW**

The Federal Arbitration Act ("FAA") provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA embodies a clear federal policy requiring arbitration unless the agreement to arbitrate itself is revocable. *Perry v. Thomas*, 482 U.S. 483, 489 (1987). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constitution. Corp.*, 460 U.S. 1, 24 (1983).

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be

4

> resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id.* at 24-25.

Accordingly, on a motion to stay court action, the Court shall stay the action until arbitration is had where the issue before the court is "referable to arbitration under such an agreement." 9 U.S.C. § 3. "In passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the underlying merits of the case. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). The purpose of this narrow scope of review is to honor "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Id.*; *see also AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986) ("in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims").

Similarly, on a motion to compel arbitration "and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Prima Paint*, 388 U.S. at 400.

In ruling on a motion to compel arbitration,

> Section 4 of the Arbitration Act requires the court to engage in a limited review. The first step of that review is to determine if a

> valid agreement to arbitrate exists between the parties. If a valid arbitration agreement exists, the court must determine if the specific dispute falls within the substantive scope of the agreement.

*Harmer v. Doctor's Associates, Inc.*, 781 F.Supp. 1225, 1228 (E.D. Mich.1991) (internal citations omitted). In other words, it is this Court's duty to interpret the agreement between the parties and determine whether they intended to arbitrate the grievances at issue. *See AT&T*, 475 U.S. at 649. A motion to compel arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

## DISCUSSION

As a preliminary matter, the Court will address the parties' motions to strike.

**A.     Plaintiff's Motion to Strike Peden Declaration**

Defendant submits the declaration of Keith J. Peden, Senior Vice President of Human Resources for defendant Raytheon. Plaintiff moves to strike paragraphs 5, 6, 7, 9, 12 and 13.

In paragraphs 5 and 6, Mr. Peden purports to testify to the parties' intention in entering into the Incentive Agreement and, more specifically, the arbitration clause. As will be discussed below, the Court finds that the arbitration clause is not ambiguous. Thus, any evidence of the parties' intent is irrelevant. Paragraphs 5 and 6 shall be stricken.

In paragraphs 7 and 9, Mr. Peden asserts that any changes to the Incentive Agreement must be in writing. Mr. Peden is wrong. According to the express terms of the Incentive

6

Agreement, only changes as to the duration of the agreement were required to be in writing. Paragraphs 7 and 9 will be stricken.

In paragraphs 12 and 13, Mr. Peden concludes that plaintiff must be understood to be an employee of Flight Options.  However, the plain terms of the Incentive Agreement provide that plaintiff will not be an employee of defendant upon closing of the sale.  Paragraphs 12 and 13 will be stricken.

**B.      Defendant's Motion to Strike Settlement Offer**

Plaintiff has submitted to this Court a settlement offer from defendant.  Plaintiff relies upon that offer for the proposition that defendant has admitted liability.

Evidence of an offer to furnish valuable consideration in an attempt to compromise a claim is inadmissible when offered to prove liability. Fed. R. Evid. 408.  Plaintiff argues that no valuable consideration was offered to him, because defendant was merely offering to pay what it already owed him under the Incentive Agreement.  *Atkinson v. International Technegroup*, 106 Ohio App. 3d 349, relied upon by plaintiff, is inapposite.  That case applied the Ohio rules of evidence not the federal rules.  Further, the court found that at the time the offer was made, no claim was pending and so the offer could not have been an offer to compromise.  The same is true of the second case relied upon by plaintiff, *C.J. Duffey Paper Co. v. Reger*, 588 N.W.2d 519 (Minn. App. 1999) (applying Minnesota rules of evidence; finding no dispute had yet arisen when offer made).

Plaintiff's argument that he relies on the settlement offer to show bad faith is also unavailing. In his reply in support of his motion to stay arbitration, plaintiff relies on the settlement offer to support the following statement: "Raytheon freely admits that it owes

7

Aggarwal the money due him under the Incentive Agreement." He makes a similar claim in his opposition to defendant's motion to compel arbitration.

Defendant's motion to strike the settlement offer is granted.

## C. Cross-Motions regarding Arbitration

The arbitration clause at issue here provides: "The parties agree that *any disputes arising during the term of your employment* with Raytheon and/or FO, including but not limited to any claims arising under the terms of this agreement, shall be subject to final and binding arbitration as the sole and exclusive forum for dispute resolution." (emphasis added)[1] Significantly, the arbitration clause at issue here does not state that it applies to "any dispute arising out of the agreement" as is the case in all of the opinions relied upon by defendant. The arbitration clause is not ambiguous. Its terms are very clear. The arbitration clause applies only to disputes that arose during plaintiff's employment. Claims arising under the terms of the Incentive Agreement are merely a subset of those claims and are only covered if they too arose during plaintiff's employment.

Defendant argues that the Court should look to when the operative facts underlying the dispute took place; if those events took place during plaintiff's employment, then the dispute "arose during plaintiff's employment" and must be arbitrated.[2] A dispute that occurs

---

[1] The Incentive Agreement appears to provide an exception to the arbitration clause for violation of the duty of loyalty contractually imposed upon plaintiff. The parties agree that this exception does not apply to the present dispute.

[2] Defendant makes two other arguments: (1) that the Court should ignore the plain language of the arbitration clause and find that the parties did in fact agree to arbitrate all claims arising under the terms

8

after a contract has expired is said to "arise under" the contract where "it involves facts and occurrences that arose before expiration" or "where an action taken after expiration infringes a right that accrued or vested under the agreement." *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 205-06 (1991). A dispute may also be said to arise under a contract where a majority of the material facts supporting the cause of action arose during the term of the contract. *Zucker v. After Six, Inc.*, 174 Fed. Appx. 944, 946 (6th Cir. 2006).

Here, plaintiff alleges that after November 30, 2007 - that is, after his employment with the pre-sale Flight Options terminated - defendant breached the Incentive Agreement by failing to pay him the various amounts provided for in the agreement.[3] Plaintiff argues that because defendant's breach occurred after plaintiff's employment had terminated, the dispute cannot have arise "during his employment." The Court disagrees. All of plaintiff's performance under the Incentive Agreement occurred during his employment. On these facts and given the unique wording of the arbitration clause at issue, the Court cannot say with "positive assurance" that the arbitration clause does not cover plaintiff's claim for breach of the Incentive Agreement. *United Steelworkers*, 363 U.S. at 582-83; *see also JPD, Inc. v. Chronimed Holdings, Inc.*, 2008 U.S. App. LEXIS 18009 (6th Cir. Aug. 22, 2008) (when

---

of the Incentive Agreement; and (2) that plaintiff is still employed by Flight Options and, for this reason alone, the dispute "arose during his employment." Each of these arguments is summarily rejected.

[3]

Plaintiff's alternate argument that the arbitration clause expired with the termination of the contract finds no support in the language of the contract. The case relied upon by plaintiff fails to support plaintiff's argument. Arbitration clauses survive unless the contract provides otherwise. *E.g., Zucker v. After Six, Inc.*, 174 Fed. Appx. 944, 946 (6th Cir. 2006).

9

determining whether a particular factual dispute falls within the scope of the arbitration clause, the court must resolve the ambiguity regarding the scope of arbitrability in favor of arbitration).

Plaintiff next argues that even if his claim for breach of the Incentive Agreement must be arbitrated, his claims regarding the Success Fee Agreement cannot be subject to the arbitration clause.  The Court disagrees.  While plaintiff argues that there is no agreement between the parties to arbitrate the Success Fee Agreement, the Incentive Agreement itself provides that "in the event you become entitled to a payment under this agreement you will not be eligible for benefits under any other Raytheon or FO agreement, plan, policy, program, or arrangement providing severance benefits."  Thus, the questions to be litigated include whether or not the success fee payment constitutes a "severance benefit" as that term is used in the Incentive Agreement.  In this way, plaintiff's claims relating to the Success Fee Agreement arise under the terms of the Incentive Agreement.  Further, like the claim for breach of the Incentive Agreement, plaintiff's claims regarding the Success Fee Agreement arise out of events that occurred during his employment.  The Incentive Agreement plainly requires arbitration of all claims that arose during his employment.[4]  As stated above, given the mandate that any ambiguity as to the scope of the arbitration clause must be resolved in favor of arbitration, the Court finds that all of plaintiff's claims must be arbitrated.

Accordingly, defendant's motion to compel is granted and plaintiff's complaint is

---

[4]

> Plaintiff's argument that the arbitration clause in the Incentive Agreement cannot apply to the separate Success Fee Agreement because the Incentive Agreement contains no integration clause is unavailing.

dismissed.  *Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269 (6th Cir.1990) (where there is "nothing left for the district court to do but execute judgment," dismissal is appropriate).  Plaintiff's motion to stay arbitration is denied.

## **CONCLUSION**

For the above-stated reasons, defendant's Motion to Compel Arbitration is GRANTED.  Plaintiff's Motion to Stay Arbitration is DENIED.  Plaintiff's Motion to Strike Portions of the Peden Declaration is GRANTED.  Defendant's Motion to Strike the Settlement Offer is GRANTED.

IT IS SO ORDERED.

        /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 9/16/08